**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
)
)
EMMETT S. MULDOON,                             )
)
            Plaintiff,                          )
)
v.                                              )
)
)          **Civil Action No.: 15-cv-13892-DJC**
DEPARTMENT OF CORRECTION, et al.,               )
)
            Defendants.                         )
)
)
_____)

### MEMORANDUM AND ORDER

**CASPER, J.**                                            **February 7, 2017**

**I.      Introduction**

Plaintiff Emmett Muldoon ("Muldoon") filed this lawsuit against Defendants Department of Correction ("MDOC"), Carol Higgins O'Brien (also spelled as Higgins-O'Brien in some pleadings), Sean Medeiros, Barbara Baker and William Mongelli (collectively the "Defendants"), alleging violations under the First Amendment, the Fourth Amendment, the Fourteenth Amendment, Articles IX and XIV of the Massachusetts Declaration of Rights, 42 U.S.C. § 1983 ("§ 1983"), Mass. Gen. L. c. 12, § 11I, Mass. Gen. L. c. 127 §§ 32, 87, Mass. Gen. L. c. 214 § 1B and Health Insurance Portability and Accounting Act ("HIPAA"). D. 26-1 at 1-2. Defendants moved to dismiss. D. 40. For the reasons discussed, the Court **ALLOWS** in part and **DENIES** in part Defendants' motion to dismiss, D. 40.

## II.     Standard of Review

The Court will grant a motion to dismiss pursuant to Rule 12(b)(6) if the complaint fails to plead sufficient facts that "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). "Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)." Pare v. Northborough Capital Partners, LLC, 133 F. Supp. 3d 334, 336 (D. Mass. 2015) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)).

When a plaintiff files a complaint *pro se*, the Court applies a liberal reading and holds *pro se* litigants to a less stringent pleading standard than that applied to lawyers. Kruskall v. Sallie Mae Serv., Inc., No. 15-cv-11780, 2016 WL 1056973, at *1 (D. Mass. Mar. 14, 2016) (citing Green v. Com. of Mass., 108 F.R.D. 217, 218 (D. Mass. 1985)). A *pro se* plaintiff, however, must still comply with procedural and substantive law and "dismissal remains appropriate . . . when the complaint fails to even suggest an actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001).

## III.     Factual Background

Muldoon is an inmate at NCI-Norfolk. D. 26-1 ¶¶ 2, 7. Muldoon's complaint centers on three sets of alleged violations. First, Muldoon asserts that Defendants have delayed his outgoing legal and non-legal mail. Muldoon states that on or about May 28, 2014 and on or about June 17, 2014, he attempted to mail legal documents without stamps to the Dedham Superior Court and the Norfolk County District Attorney, but that these documents were improperly returned to him. Id. ¶¶ 9-10. Muldoon further alleges that on or about December 24, 2014, he attempted to mail a non-

legal letter without stamps, but that this letter was not mailed and instead returned to him. Id. ¶ 16. Muldoon also contends that he attempted to mail legal documents to the Dedham Superior Court and Norfolk County District Attorney without stamps on or about January 15, 2015, but that these documents were returned to him. Id. ¶ 20. Each time mail was returned to Muldoon, it was accompanied by forms that stated that Muldoon was not considered indigent. Id. ¶¶ 9-10, 16, 20; D. 26-2 at 8-10, 19-21, 38-40. In response to these delays in getting his legal and non-legal mail delivered, Muldoon filed formal grievances, D. 26-1 ¶¶ 11, 17-19, 24, and spoke with MDOC officials Sean Medeiros ("Medeiros") and Barbara Baker ("Baker") regarding these incidents, id. ¶¶ 12, 17, 21-23.

Muldoon also pleads facts related to incidents centered on the opening and inspecting of his incoming mail. Muldoon first asserts that DOC officials opened medical documents sent by Lemuel Shattuck Hospital outside of Muldoon's presence in November 2014. Id. ¶ 15. Muldoon alleges that similar incidents in which his incoming medical correspondence was opened outside of his presence occurred in February 2015, May 2015 and July 2015. Id. ¶¶ 26, 31, 33, 36. Muldoon states that he filed grievances related to some of these incidents. Id. ¶¶ 27, 29, 32, 34-35.

Finally, Muldoon seeks redress for incidents arising from his interactions with law librarian, William Mongelli ("Mongelli"). On April 3, 2013, Muldoon alleges that he requested copies of documents to support a motion to withdraw his guilty plea which included letters from his attorney, medical and psychiatric records and documents related to his social security proceedings. Id. ¶¶ 8, 38. When making his request, Muldoon explained to Mongelli that he did not want to leave his documents with an unsupervised inmate clerk, but Mongelli denied Muldoon's request to be present during the copying of his documents. Id. ¶ 38. Muldoon's initial

grievance and appeal about this incident were denied.  Id. ¶ 39.  As a result, Muldoon did not get

his Rule 30(b) motion copied until February 2014.  Id. ¶ 40.

## IV.     Procedural History

Muldoon instituted this action on November 12, 2015.  D. 1.  The Defendants have now

filed a motion to dismiss[1] for failure to state a claim, D. 40.[2]

## V.      Discussion

### A.     42 US.C. § 1983 Claims Against MDOC and Individual Defendants in Their Official Capacities (Counts I, II and III)

To lodge an adequate § 1983 claim, Muldoon must allege that a "person who, under color

of any statute, ordinance, regulation, custom, or usage, of any State . . . , subject[ed], or cause[d]

[him] to be subjected, . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws . . . ."  42 U.S.C. § 1983.  To do so, Muldoon must demonstrate (1) that the

conduct complained of transpired under the color of state law; and (2) as a result, he suffered a

deprivation of his rights.  Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015) (citing Santiago

v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011)).

Defendants first contend that Muldoon fails to state a claim under his multiple § 1983

claims as to MDOC because a state agency does not qualify as a "person" under this statute.

D. 42 at 10.  States and their agencies are not subject to § 1983 liability because these entities are

not "person[s]" under this statute.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989);

---

[1] Defendants' motion is also filed as a motion for summary judgment in the alternative, D. 55 at 1-2, 4, but the Court only considers Defendants' motion as a Fed. R. Civ. P. 12(b)(6) motion.

[2] Muldoon has also filed a motion for sanctions against Defendants' attorney Jennifer Staples ("Staples").  D. 54.  The Court denies this motion and denies his related request for oral argument as to his motion for sanctions against Staples.  D. 52.

McNeil v. Massachusetts, No. 14-cv-14370-DJC, 2014 WL 7404561, at *3 (D. Mass. Dec. 30, 2014) (citing Will, 491 U.S. at 66).  MDOC is an agency of the Commonwealth, Sepulveda v. UMass Corr. Health, Care, No. 14-cv-12776-ADB, 2016 WL 475168, at *15 (D. Mass. Feb. 5, 2016), and thus is not subject to § 1983 liability for this reason.  To the extent that any of Muldoon's § 1983 claims in Counts I, II and III are brought against MDOC, the Court grants dismissal.

Defendants next contend that the individual defendants who have been sued in their official capacities are not "persons" pursuant to § 1983, and claims for monetary damages against these individuals should be dismissed.  D. 42 at 10.  Muldoon's prayer for relief seeks compensatory and punitive damages against Carol Higgins O'Brien ("Higgins O'Brien"), Medeiros and Baker in their official capacities in Counts I, II and III under § 1983.  D. 26-1 at 18.  Claims for damages against defendants in their official capacity are not cognizable under § 1983 because these defendants are not "persons" under the statute.  Will, 491 U.S. at 71 & n.10; Greene v. Cabral, No. 12-cv-11685-DPW, 2015 WL 4270173, at *4 n.2 (D. Mass. July 13, 2015) (citing Will, 491 U.S. at 71); McNeil, 2014 WL 7404561, at *3 (citing Will, 491 U.S. at 65-66); Villanueva v. Franklin Cty. Sheriff's Office, 849 F. Supp. 2d 186, 190 (D. Mass. 2012) (citing Will, 491 U.S. at 71; Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991)).  As to defendants in their official capacity, the Court grants dismissal with respect to Muldoon's § 1983 claims for monetary damages.

Muldoon, however, also asserts claims for injunctive relief against defendants in their official capacity such that these defendants.  D. 26-1 at 19-20; see also D. 55 at 2-3 (explaining that Muldoon sought injunctive relief against Higgins O'Brien, Medeiros and Baker).  While a plaintiff cannot bring a § 1983 claim for damages against a state official in their official capacity,

see supra, a plaintiff is allowed to seek injunctive relief against these same officials pursuant to § 1983.  See O'Neil v. Baker, 210 F.3d 41, 47 (1st Cir. 2000) (citing Erwin Chemerinsky, Federal Jurisdiction § 7.5, at 389 (2d ed. 1994)); Greene, 2015 WL 4270173, at *4 n.2 (citing Will, 491 U.S. at 71 n.10).

Thus, the Court dismisses Counts I, II and III against MDOC in full and dismisses Counts I, II and III against the individual defendants in their official capacity as to Muldoon's prayer for relief for damages.  The § 1983 claims raised in Counts I and III that remain are (1) those claims against Higgins O'Brien, Medeiros and Baker in their personal capacities and (2) claims for injunctive relief against Higgins O'Brien, Medeiros and Baker in their official capacities.  The § 1983 claims in Count II that remain are (1) those claims against Higgins O'Brien, Medeiros, Baker and Mongelli in their personal capacities and (2) claims for injunctive relief against Higgins O'Brien, Medeiros and Baker in their official capacities.

**B.    MCRA    Claims    Against    MDOC    and    Individual    Defendants (Counts    I, III)**

In Counts I and III, Muldoon asserts state civil rights claims under Mass. Gen. L. c. 12, § 11I, the Massachusetts Civil Rights Act ("MCRA").  D. 26-1 ¶¶ 42-47, 51-54; see McClure v. Town of E. Brookfield, No. 972004B, 1999 WL 1323628, at *2 (Mass. Super. Mar. 11, 1999).  "To establish a claim under the [MCRA], the plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."  Do Corp. v. Town of Stoughton, No. 13-cv-11726-DJC, 2013 WL 6383035, at *12 (D. Mass. Dec. 6, 2013) (quoting Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 395 (1996)) (alteration in original).

Defendants assert that these counts should be dismissed as to MDOC and the defendants in their official capacity because the MCRA does not provide for claims against either state agencies or individuals sued in their official capacity. D. 42 at 10-11. First, Muldoon cannot raise an MCRA claim against MDOC. Neither the state nor its agencies are considered "persons" within the meaning of the MCRA. Latimore v. Suffolk Cty. House of Corrs., No. 14-cv-13378-MBB, 2015 WL 7737327, at *6 (D. Mass. Dec. 1, 2015) (citing Maraj v. Massachusetts, 836 F. Supp. 2d 17, 30 (D. Mass. 2011)); Greene, 2015 WL 4270173, at *10 (citing Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002)). MDOC is part of the Commonwealth, Sepulveda, 2016 WL 475168, at *15, and is not a "person" within the meaning of the MCRA. Muldoon also cannot maintain an MCRA cause of action against Higgins O'Brien, Medeiros and Baker in their official capacities, D. 26-1 at 18, because these defendants do not qualify as "persons" under the MCRA. Greene, 2015 WL 4270173, at *10 (citing Kelley, 288 at 11 n.9). The Court dismisses these claims.

To the extent that Muldoon can otherwise assert MCRA claims against Higgins O'Brien, Medeiros, Baker and Mongelli in their personal capacities, those claims fail too. As discussed above, under the MCRA, "[a]n interference with a secured right is only a violation of the Act if it is accomplished through threats, intimidation, or coercion." Kennie v. Nat. Res. Dep't of Dennis, 451 Mass. 754, 763 (2008) (citing Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565-66, cert. denied, 516 U.S. 931 (1995)). Pleading a legal violation alone does not by itself provide the necessary allegations to show that this violation occurred via threats, intimidation or coercion. Barbosa v. Conlon, 962 F. Supp. 2d 316, 331-32 (D. Mass. 2013) (collecting cases). "A threat is 'the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.'" Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 750 (2002) (quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994)). Intimidation equates

to putting someone "in fear for the purpose of compelling or deterring" his or her conduct. Id. "[C]oercion is 'the application . . . of such force, either physical or moral, as to constrain him to do [something] against his will . . . .'" Id. at 750-51 (quoting Deas v. Dempsey, 403 Mass. 468, 471 (1988)). Moreover, the requisite threats, intimidation and coercion need to be separate from the alleged constitutional violation. Parks v. Town of Leicester, No. 10-cv-30120-FDS, 2011 WL 864823, at *5 (D. Mass. Mar. 9, 2011) (citing Sarvis v. Bos. Safe Deposit and Trust Co., 47 Mass. App. Ct. 86, 93 (1999)).

Muldoon has not met the threshold requirements for bringing an MCRA claim. First, Muldoon does not provide any allegations that any of the individual defendants used or threatened physical force, or physically intimidated him. See Blake, 417 Mass. at 475-76 (affirming judgment because defendants "prevent[ed] others physically from entering, leaving, or using medical facilities to obtain abortions to which they were . . . entitled"); Haufler v. Zotos, 446 Mass. 489, 506-07 (2006) (determining that defendant's conduct that included running toward an individual with a rake in hand, shouting epithets and forcing a worker accompanied by a law enforcement officer off of property constituted threats and intimidation).

Muldoon also does not allege any coercion cognizable under the MCRA. First, there are no claims of intimidation or coercion by Higgins O'Brien. D. 26-1. Second, the complaint provides only two allegations that arguably are of this nature as to Baker and Medeiros. Muldoon alleges that when he tried to discuss his complaints about delays in mailing his legal documents, Baker "aggressively stated to him; 'Your [sic] not indigent." D. 26-1 ¶ 22. In addition, Muldoon asserts Medeiros told Muldoon that all of the inmates needed to manage their money better. D. 26-1 ¶ 23. "[T]he exception for claims based on non-physical coercion remains a narrow one." Meuser v. Fed. Express Corp., 564 F.3d 507, 519 (1st Cir. 2009) (quoting Meuser v. Fed. Express

Corp., 524 F. Supp. 2d 142, 148 (D. Mass. 2007)).  The statements here do not rise to intimidation or coercion under this exception.  See id. at 520 (concluding that there was no threat, intimidation or coercion when an individual slammed her hands on a desk and shouted).  Muldoon's MCRA claims are thus dismissed in full.

### C.     Denial of Access to the Courts in Violation of 42 U.S.C. § 1983 (Count I)

Muldoon alleges that Defendants improperly deprived him of his First Amendment right of access to the courts and his rights under Article XI of the Massachusetts Constitution and thus violated § 1983.  D. 26-1 ¶¶ 42-47.

*1.     Muldoon's First Amendment and Article XI Violation Claims*

Pursuant to the First Amendment, every citizen has a constitutional right "to petition the Government for a redress of grievances," U.S. Const. amend. I, and one established aspect of this right is meaningful access to the courts.  Fabiano v. Hopkins, 352 F.3d 447, 453 (1st Cir. 2003); Shabazz, 69 F. Supp. at 197.  Prisons must "be effective in providing inmates with the ability to file petitions and complaints with a court, thus providing those inmates with 'meaningful access' to the judicial system."  Pentlarge v. Murphy, No. 04-cv-30177-NG, 2006 WL 6627816, at *3 (D. Mass. Feb. 28, 2006) (quoting Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986)).  "To establish a violation of this nature, a plaintiff must establish 'actual injury.'"  Evicci v. Baker, 190 F. Supp. 2d 233, 241 (D. Mass. 2002) (citing Lewis v. Casey, 518 U.S. 343, 349 (1996)).  To demonstrate an actual injury, a plaintiff must allege that the defendant was responsible for or took actions that hindered the plaintiff's efforts to pursue a legal claim.  Boivin v. Black, 225 F.3d 36, 43 n.5 (1st Cir. 2000) (citing Lewis, 518 U.S. at 349); Weems v. Vose, No. 95-2235, 1996 WL 390465, at *1 (1st Cir. July 12, 1996) (citing Lewis, 518 U.S. at 349); see Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir.1997)).  Plaintiffs "are required

to plead facts sufficient to demonstrate that defendants actually impeded or frustrated a non-frivolous claim relating to either the inmate's criminal conviction or his conditions of confinement." Hannon v. Beard, 979 F. Supp. 2d 136, 140 (D. Mass. 2013) (citing Lewis, 518 U.S. at 352-55). This injury can manifest in different forms, including causing a plaintiff to miss court deadlines or actions that result in the loss, dismissal or rejection of a claim, but must demonstrate some actual prejudice. Evicci, 190 F. Supp. 2d at 241 (citing Sowell v. Vose, 941 F.2d 32, 35 (1st Cir. 1991)); Ellis v. Viles, No. 09-cv-40001-PBS, 2010 WL 6465282, at *3-4 (D. Mass. Aug. 26, 2010); see Dunbar v. Barone, 487 F. App'x 721, 724 (3d Cir. 2012); Davis, 320 F.3d at 351. A plaintiff does not, however, properly plead injury when he presents only general allegations that a case could have been affected by a defendant's actions. Hannon, 979 F. Supp. 2d at 140.

Defendants first contend that Muldoon failed to allege an actual legal injury. D. 42 at 14. This is true as to several of Muldoon's allegations. The allegations made by Muldoon regarding delays in mailing on May 28, 2014, July 21, 2014 and January 15, 2015 draw no connection between any such delays and an actual injury sustained by Muldoon. D. 26-1 ¶¶ 9, 14, 20. Muldoon thus fails to raise an access to the courts claim as to these allegations. Weems, 1996 WL 390465, at *1 (concluding that appellant's claim was meritless because he did not demonstrate "that the alleged shortcomings in the library or legal assistance hindered his efforts to pursue a legal claim" (quoting Lewis, 518 U.S. at 351)); Hannon, 979 F. Supp. 2d at 140 (dismissing claim because complaints did not detail how the defendants' alleged actions negatively affected legal proceedings).

Muldoon's allegations as to his attempt to mail documents on June 17, 2014, however, stand on different footing and survive this motion to dismiss. D. 26-1 ¶ 10. As to the basis for his

claim, Muldoon alleges that he attempted to mail an affidavit in support of his Rule 30(b) motion in state court which explained why he failed to obtain an affidavit from his attorney. D. 26-1 ¶ 12. Muldoon further alleges that the Commonwealth filed an opposition to his Rule 30(b) motion, highlighting that Muldoon did not provide either affidavit from his attorney or an explanation for the absence of such an affidavit, D. 26-1 ¶ 13, and that this was part of the Court's decision to deny Muldoon's Rule 30(b) motion. D. 26-1 ¶ 30. Muldoon thus does adequately allege an injury as to his June 17, 2014 mail. Although Defendants contend that he does not sufficiently allege how the delay caused him harm in his case, reading his allegations in the light most favorable to him, he does, at a minimum, allege how such delay impeded or frustrated his legal claims in state court. Hannon, 979 F. Supp. 2d at 140. That is, Muldoon asserts generally that "several of his legal filings mailed to the Dedham Superior Court (DSC) have not been entered on the docket" and that "it is unknown if any of the original defendants named in this action, or their agents, have played a role in these missing documents." D. 26-1 ¶ 8.

To the extent that this § 1983 access to the courts claim survives, so too does his claim for the right of access to the courts under Article XI of the Massachusetts Constitution ("Article XI"). D. 26-1 ¶ 44. This claim rests on the same factual allegations as Muldoon's federal constitutional claim to access to the courts. D. 26-1 ¶¶ 42-45. Defendants move to dismiss for the same reasons articulated in their First Amendment analysis. D. 42 at 14. When a plaintiff asserts a defendant has violated his right of access to the court under Article XI, the plaintiff must show that the defendant's actions prevented or hindered their efforts to present a non-frivolous legal claim. Haas v. Spencer, No. WOCV201101399, 2012 WL 7017165, at *10 (Mass. Super. Dec. 11, 2012) (citing Puleio v. Comm'r of Corr., 52 Mass. App. Ct. 302, 311 (2001)); Kilburn v. Nolan, No. 04-2034, 2006 WL 4119685, at *2 (Mass. Super. Oct. 13, 2006) (citing Puleio, 52 Mass. App. Ct. at 311).

This is the same test as the First Amendment claim discussed above. Thus, for the same reasons discussed above, this claim must also be dismissed as to all of the 2014-2015 mailings except the June 17, 2014 mailing claim which survives.

2.    *Muldoon's § 1983 Claim Against Higgins O'Brien*

Muldoon alleges that Higgins O'Brien failed to supervise and train Medeiros, Baker and others properly in the handling of inmate mail. D. 26-1 ¶ 47. Defendants move to dismiss on the basis that there is no supervisory liability under § 1983. It is true that "the tort theory of respondeat superior does not allow imposition of supervisory liability under § 1983" and further "§ 1983 liability cannot rest solely on a defendant's position of authority." Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014) (citing Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 16 (1st Cir. 2011)). Instead, Muldoon is required to provide "a strong causal connection between the supervisor's conduct and the constitutional violation." Id. at 19 (citing Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir.2011)). This showing requires presenting allegations that "the supervisor's conduct led *inexorably* to the constitutional violation," id. at 19-20 (quoting Hegarty v. Somerset Cty., 53 F.3d 1367, 1380 (1st Cir.1995)) (emphasis in original), and that "the supervisor's liability [is] premised on his own acts or omissions." Guadalupe-Baez v. Pesquera, 819 F.3d 509, 514-15 (citing Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989)). This can be shown through "direct participation" or "conduct that amounts to condonation or tacit authorization." Jones v. Han, 993 F. Supp. 2d 57, 67 (D. Mass. 2014) (quoting Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir.1999)). Muldoon provides no facts as to Higgins O'Brien's acts or omissions to support his allegation that Higgins O'Brien failed to supervise and train Medeiros, Baker and others properly in handling inmate mail.

He also provides no assertions of a "history of widespread abuse sufficient to alert a supervisor to ongoing violations." Vega v. Vivoni, 389 F. Supp. 2d 160, 167 (D.P.R. 2005) (quoting Gutierrez-Rodriguez, 882 F.2d at 561-562). Accordingly, this claim against Higgins O'Brien is dismissed.

**D.** **Right to Privacy in Papers Pursuant to § 1983 and Mass. Gen. L. c. 214, §1B (Count II)**

In Count II, Muldoon alleges that Higgins O'Brien, Medeiros and Baker violated his First Amendment and Massachusetts Article XI right to seclusion and privacy and that the MDOC policy of requiring inmates to relinquish legal, medical, mental health and government agency documents to Mongelli to be copied pursuant to 103 C.M.R. § 478.01 constitutes an unreasonable invasion of his right to privacy in his papers. D. 26-1 ¶¶ 48-50.

*1.* *Muldoon's First Amendment Invasion of Privacy Claims*

As to the improper inspection of his medical mail, Muldoon brings both a federal claim under § 1983 and a state claim pursuant to Mass. Gen. L. c. 214, § 1B. D. 26-1 ¶¶ 48-50.

Defendants first argue for dismissal of all of Count II because "Plaintiff has not presented any facts to suggest that any of the Defendants disclosed private information about him at any time." D. 42 at 16. As to Muldoon's § 1983 medical mail allegations, this is accurate. None of Muldoon's claims as to the improper opening of his medical mail include allegations that Higgins O'Brien, Baker, Medeiros or Mongelli opened or inspected his mail improperly. See D. 26-1 ¶¶ 15, 26, 31, 33, 36. When plaintiffs provide no allegations of improper actions taken by defendants sued in their personal capacity, their § 1983 claim must fail. Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010) (citing Rogan, 175 F.3d at 77). Thus, Muldoon's claim for invasion of privacy cannot survive as against Higgins O'Brien, Baker, Medeiros or Mongelli in their personal capacity.

Muldoon also brings these allegations against Higgins O'Brien, Medeiros and Baker in their official capacity for enforcing a policy that allowed Muldoon's mail to be opened outside of his presence and outside the scope of officials' employment. D. 26-1 ¶ 49. Namely, Muldoon asserts that prison officials opened his confidential, incoming medical mail outside of his presence on various occasions. Id. ¶¶ 15, 26, 31, 33, 36. "The Supreme Court has implied that the Constitution might protect in some circumstances 'the individual interest in avoiding disclosure of personal matters' from government infringement." Nunes v. Mass. Dep't of Correction, 766 F.3d 136, 143 (1st Cir. 2014) (quoting Whalen v. Roe, 429 U.S. 589, 599 (1977)). Although the First Circuit has not decided "whether prisoners have a constitutional right to keep medical information private," id. at 144, other circuit courts have recognized that an inmate has a right to privacy as to their medical information subject to certain reasonable limitations. See, e.g., Moore v. Prevo, 379 F. App'x 425, 427 (6th Cir. 2010) (adopting the reasoning of the Third Circuit and concluding that prisoners generally have a constitutional right to privacy with respect to medical information); Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001) (concluding that a prisoner has a constitutional right to privacy in their medical information but that this right is not violated when subject to reasonable prison policies or regulations); Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999) (concluding that inmates had a right to privacy as to undisclosed transsexual identity); see Klein v. MHM Corr. Servs., Inc., No. 08-cv-11814-MLW, 2010 WL 3245291, at *5 (D. Mass. Aug. 16, 2010) (collecting cases in which "courts have constitutionalized medical privacy in the prison context").

Assuming that such a privacy right exists in the First Circuit, Muldoon has adequately alleged a First Amendment violation. Although "not every government action which affects the confidentiality of medical records will impose a constitutionally cognizable burden on the right of privacy," Klein, 2010 WL 3245291, at *4 (quoting Borucki v. Ryan, 827 F.2d 836, 841 (1st Cir.

1987)), the Court must read Muldoon's allegations liberally at this stage in litigation. Here, Muldoon cites several instances in which he alleges that his confidential medical mail had been opened prior to his receiving it. D. 26-1 ¶¶ 15, 26, 31, 33, 36. At this early stage, these allegations suffice to survive Defendants' motion to dismiss. Other questions of fact, like whether the defendants were enforcing a reasonable prison policy or regulation in having opened Muldoon's medical mail, are properly addressed at a later stage. Thus, the Court will not dismiss Muldoon's First Amendment claim against Higgins O'Brien, Medeiros and Baker in their official capacities.

Muldoon also raises § 1983 claims against Defendants for violating his First Amendment right to privacy by requiring him to "relinquish legal, medical, mental health, and government agency documents to Mongelli . . . to be copied" pursuant to 103 C.M.R. § 478.01. D. 26-1 ¶ 50. First Defendants argue for dismissal on the basis that Muldoon again alleges no facts that any defendant disclosed private information about him at any time. D. 42 at 16. As discussed, to prevail on a claim against officials in their personal capacity Muldoon must allege facts that each defendant's personal actions violated his rights. Braga, 605 F.3d at 61 (citing Rogan, 175 F.3d at 77). Muldoon alleges no facts that Higgins O'Brien, Baker or Medeiros were involved in implementing or enforcing the photocopying procedures at the prison law library. D. 26-1 ¶¶ 37-40. The same cannot be said for Mongelli. Muldoon alleges that he asked Mongelli to copy legal materials among other documents for Muldoon, but Mongelli denied his request after Muldoon stated he did not want to leave his documents with an unsupervised inmate clerk. Id. Thus Muldoon has lodged specific claims related to Mongelli's personal actions. For this reason, the Court grants dismissal on this basis only as to Higgins O'Brien, Baker and Medeiros.

Although Muldoon does not specifically assert any disclosure by Mongelli that occurred, D. 26-1 ¶¶ 37-40, it is a reasonable inference from Muldoon's allegations that Mongelli had to

examine his documents, including his medical records, to copy them for Muldoon. Whether such actions by Mongelli were reasonable and therefore did not infringe on Muldoon's right to privacy is a question of fact better suited for summary judgment or trial. For now, this claim survives.

2.      *Muldoon's Claims Under Massachusetts Invasion of Privacy Grounds*

Muldoon also asserts a state claim under Mass. Gen. L. c. 214 against Defendants for opening his medical mail. D. 26-1 ¶¶ 48-50. Massachusetts provides individuals with "a right against unreasonable, substantial or serious interference with his privacy." Mass. Gen. L. c. 214, § 1B. Generally, "for a plaintiff to succeed on an invasion of privacy claim, he must prove not only that the defendant unreasonably, substantially and seriously interfered with his privacy by disclosing facts of highly personal or intimate nature, but also that it had no legitimate reason for doing so." Spencer v. Roche, 755 F. Supp. 2d 250, 271-72 (D. Mass. 2010) (quoting Martinez v. New England Med. Ctr. Hosps., Inc., 307 F. Supp. 2d 257, 267 (D. Mass. 2004)), aff'd, 659 F.3d 142 (1st Cir. 2011). Section 1B was enacted to protect individuals from "disclosure of facts . . . of a highly personal or intimate nature when there exists no legitimate, countervailing interest." Dasey v. Anderson, 304 F.3d 148, 153-54 (1st Cir. 2002) (quoting Bratt v. Int'l Bus. Machs. Corp., 392 Mass. 508, 518 (1984)). While most of Massachusetts jurisprudence under the statute involves public disclosure of information, "a plaintiff also may support a claim of invasion of privacy by showing that a defendant has intruded unreasonably upon the plaintiff's 'solitude' or 'seclusion.'" Polay v. McMahon, 468 Mass. 379, 382 (2014) (collecting cases). To assert an appropriate invasion of privacy claim, a plaintiff must show a serious or substantial interference that was unreasonable or unjustified. E.T. ex rel. Doe v. Bureau of Special Educ. Appeals of the Div. of Admin. Law Appeals, 169 F. Supp. 3d 221, 250-51 (D. Mass. 2016).

The Defendants first argue that Muldoon's claim should be dismissed because he alleges no disclosures by the Defendants in his second amended complaint. D. 42 at 18-19. Under a disclosure theory, Muldoon's claim must fail. He alleges no facts that Defendants gathered and disseminated personal facts. See, e.g., D. 26-1 ¶¶ 26, 31, 33, 36; cf. Dasey, 304 F.3d at 154-55 (granting summary judgment because the plaintiff neither alleged nor produced evidence of gathering and dissemination). While this is true it does not lead to immediate dismissal—as Muldoon highlights, D. 55 at 14-15—because Massachusetts courts have recognized claims under the statute when a plaintiff alleges intrusion upon his seclusion. Polay, 468 Mass. at 382; E.T. ex rel. Doe v. Bureau of Special Educ. Appeals of the Div. of Admin. Law Appeals, 91 F. Supp. 3d 38, 53 (D. Mass. 2015) (collecting cases).

As mentioned, an invasion of privacy claim must allege an intrusion upon privacy that is unreasonable or unjustified. E.T. ex rel. Doe, 169 F. Supp. 3d at 250-51. "In determining whether a defendant committed an unreasonable intrusion, we balance the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." Polay, 468 Mass. 379 at 382 (collecting cases). In so doing, the Court may consider "the location of the intrusion, the means used, the frequency and duration of the intrusion, and the underlying purpose behind the intrusion." E.T. ex rel. Doe, 169 F. Supp. 3d at 250 (citing Polay, 468 Mass. at 383).

This, however, is a fact-based inquiry not for resolution at this juncture, because Muldoon has at least alleged sufficient facts regarding the intrusion. In his second amended complaint, Muldoon highlights four instances in which his medical correspondence was opened outside of his presence by DOC officials. See, e.g., D. 26-1 ¶ 33. Whether such intrusion was reasonable given prison regulations and penological concerns should be determined on a developed record at

summary judgment or trial.  For these reasons, Muldoon's Mass. Gen. L. c. 214, § 1B claim as to his medical mail survives Defendants' motion to dismiss.

Similarly, Muldoon's Mass. Gen. L. c. 214, § 1B claim regarding the requirement that Muldoon leave legal, medical, mental health and government agency documents with Mongelli to be copied, D. 26-1 ¶ 50, also survives.  Whether such minimal intrusions were unreasonable in scope and duration is a factual inquiry.  E.T. ex rel. Doe, 91 F. Supp. 3d at 53; cf. Polay, 469 Mass. at 385 (finding plaintiffs made out a claim in part because the alleged invasion was continuous and extended in duration).   This claim survives.

### E.    Illegal Seizure of Papers Under 42 U.S.C. § 1983 (Count III)

In Count III, Muldoon makes two allegations.  Muldoon asserts that Higgins O'Brien, Medeiros and Baker seized his non-privileged medical mail in violation of the Fourth Amendment and Article XIV of the Declaration of Rights ("Article XIV").  D. 26-1 ¶ 53.  Muldoon also alleges that Higgins O'Brien, Medeiros and Baker violated his Fourth Amendment and Article XIV rights by failing to deliver his legal documents to the post office within the 24-hour limitation period set forth in 103 C.M.R. § 481.08(3) and instead withheld those documents from delivery.  D. 26-1 ¶ 52.  Defendants move to dismiss on both grounds.  D. 42 at 19-23.

As to Muldoon's claim that his medical mail was seized in violation of the Fourth Amendment, D. 26-1 ¶ 53, Muldoon fails to state a claim.  Muldoon alleges that his non-privileged mail was opened outside of his presence.  D. 26-1 ¶¶ 15, 26, 31, 33, 36.  As Defendants highlight, D. 42 at 21, this alone does not rise to a violation.  Prison officials can inspect incoming and outgoing correspondence without violating an inmate's Fourth Amendment rights.  Salameh v. Duval, No. 12-cv-10165-RGS, 2014 WL 691610, at *4 (D. Mass. Feb. 21, 2014) (citing Hudson v. Palmer, 468 U.S. 517, 538 (1984) (O'Connor, J., concurring)); see Davenport v. Rodgers, 626

F. App'x 636, 637 (7th Cir. 2015), reh'g denied (Feb. 22, 2016) (citing Stroud v. United States, 251 U.S. 15, 21-22 (1919)); Ransom v. Greenwood, 288 F. App'x 396, 397 (9th Cir. 2008) (citing Hudson, 468 U.S. at 527; Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995)); United States v. Solomon, No. 05-cr-0385 01, 2007 WL 1099097, at *3 (W.D. Pa. Apr. 11, 2007) (collecting cases). In addition, as stated above, case law recognizes that the inspection of non-privileged inmate mail serves a legitimate security and penological purpose, and Muldoon alleges no facts to assert that these purposes were not served here. See Stow v. Grimaldi, 993 F.2d 1002, 1004-05 (1st Cir. 1993); Battista v. Murphy, No. 09-cv-11406-NG, 2010 WL 3245286, at *3 (D. Mass. Aug. 16, 2010); Hudson v. O'Brien, No. 09-cv-10276-RWS, 2010 WL 2900529, at *2 (D. Mass. July 21, 2010); Gillespie v. Wall, No. 10-cv-188-S, 2011 WL 3319990, at *7 (D.R.I. Aug. 1, 2011). For these reasons, this claim is dismissed as to the opening of Muldoon's non-privileged mail outside of his presence.

Muldoon additionally alleges a Fourth Amendment violation related to the alleged seizure of his outgoing legal mail. Defendants contend that Muldoon has failed to state a violation under the Fourth Amendment because his allegations only demonstrate that his mail was returned to him because he did not provide postage and was not classified as indigent. D. 42 at 20. At this stage, however, Muldoon's allegations are enough to survive dismissal. For example, in his complaint, Muldoon asserts that "legal documents he mailed to the DSC and NCDA . . . were not delivered to the post office within the 24 hour limitation" set forth in the regulations and instead were "intentionally held" by Defendants Higgins O'Brien, Medeiros and Baker in violation of his rights under the Fourth Amendment. D. 26-1 ¶ 52. Muldoon also provides multiple examples throughout his complaint that detail some of the instances in which he alleges that his legal mail was improperly seized. Muldoon asserts, for instance, that he attempted to mail legal documents to the

Dedham Superior Court and Norfolk County District Attorney by marking each envelope "Legal No Funds" and that he had only $0.03 in funds, yet his documents were returned to him without being mailed. D. 26-1 ¶ 20. Whether or not the Defendants were acting reasonably because they were taking action pursuant to state regulations, namely 103 C.M.R. § 481.06, see D. 42 at 20, is a question of fact better suited for resolution at a later stage in litigation. That is, the touchstone of reasonableness is a fact-based inquiry not properly before the Court at the motion to dismiss stage. Thus, reading the complaint in the light most favorable to this *pro se* litigant, the Court concludes his Fourth Amendment claim survives.

Muldoon relies upon these same factual underpinnings to raise a § 1983 claim based on Article XIV. Mass. Const. Pt. 1, art. XIV. Under Article XIV, "[e]very subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions." Mass. Const. Pt. 1, art. XIV. There is significant overlap between the Fourth Amendment and Article XIV because both rights protect against undue searches and seizures and "[t]he 'ultimate touchstone of both the Fourth Amendment . . . and art. 14 . . . is reasonableness." Commonwealth v. Rodriguez, 472 Mass. 767, 775-76 (2015) (alteration in original) (quoting Commonwealth v. Overmyer, 469 Mass. 16, 20 (2014)). The Court, however, acknowledges that Article XIV "may provide greater protection than the Fourth Amendment." Id. (quoting Commonwealth v. Rodriguez, 430 Mass. 577, 584 (2000)). For the reasons discussed above, the Court concludes that Muldoon's § 1983 claim based upon Article XIV survives to the same extent that his Fourth Amendment claim survives.

### F.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" Barbosa, 962 F. Supp. 2d at 326-27 (D.

Mass. 2013) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)); see also Miller v. Spencer,

No. 12-cv-10504-JGD, 2014 WL 957743, at *8 (D. Mass. Mar. 11, 2014) (same). Accordingly,

as to the individual defendants sued in their personal capacity for monetary damages, "[a] court

must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a

constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the

defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 268-69 (1st Cir. 2009)

(citing Pearson, 555 U.S. at 231-32). "The court has the discretion to determine in which order to

address this two-step analysis." Miller, 2014 WL 957743, at *8 (citing Maldonado, 568 F.3d at

269-70). As explained above, the first part of the test has been fulfilled: Muldoon has sufficiently

pled facts that make out constitutional violations. See supra.

Under the second part of the test, "the relevant, dispositive inquiry in determining whether

a right is clearly established is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted." Barbosa, 962 F. Supp. 2d at 326-27 (quoting

Maldonaldo, 568 F.3d at 269). Indeed, the Court must consider two factors: "(a) whether the legal

contours of the right in question were sufficiently clear that a reasonable officer would have

understood that what he was doing violated the right, and (b) whether in the particular factual

context of the case, a reasonable officer would have understood that his conduct violated the right."

Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir. 2011) (citing Decotiis v. Whittemore, 635 F.3d

22, 36 (1st Cir. 2011)). "[I]f 'officers of reasonable competence could disagree' on the lawfulness

of the action, defendants are entitled to immunity.'" Id. at 33 (quoting Malley v. Briggs, 475 U.S.

335, 341 (1986)). Even if there is no case law directly on point, "a general constitutional rule"

already identified that clearly applies to the conduct in question is sufficient to dictate that no

qualified immunity may extend to the defendants. <u>Jones v. Han</u>, 993 F. Supp. 2d 57, 66-67 (D. Mass. 2014) (quoting <u>Limone v. Condon</u>, 372 F.3d 39, 48 (1st Cir. 2004)).

When taking Muldoon's allegations as true with respect to the claims that remain against the individual defendants sued in their personal capacity and considering the case law available, the Court concludes that Muldoon has shown that his rights were established at the time of the infractions and that a reasonable officer would be on notice that his conduct was in violation of those rights. <u>See</u> <u>supra</u>. Thus, the Court concludes that there has been no showing, at least at this juncture, that the individual defendants in their personal capacity are entitled to qualified immunity.

**G.     Denial of Equal Treatment Pursuant to Mass. Gen. L. c. 127, § 32 (Count IV)**

In Count IV, Muldoon alleges that "O'Brien, Medeiros, Baker, and the several other unknown DOC officials, have denied him the equal treatment afforded non-indigent inmates" in violation of Mass. Gen. L. c. 127, § 32 ("Section 32"). D. 26-1 ¶ 58. Section 32 provides that "[t]he superintendents of the institutions under the supervision of the department of correction shall treat the prisoners with the kindness which their obedience, industry and good conduct merit." Mass. Gen. L. c. 127, § 32. The law "has been construed to assure 'equal treatment, *as far as may reasonably be*, for prisoners who are not being disciplined." <u>See</u> <u>Hastings v. Comm'r of Corr.</u>, 424 Mass. 46, 53 (1997) (emphasis in original) (quoting <u>Blaney v. Comm'r of Corr.</u>, 374 Mass. 337, 341 (1978)).

Section 32, however, only applies to those individuals who are named superintendents of state correctional facilities, and does not apply to any other correctional officers. <u>See</u> <u>Rasheed v. D'Antonio</u>, No. 10-cv-11253-GAO, 2012 WL 4049376, at *40 (D. Mass. Sept. 12, 2012); <u>Mallory</u>

v. Marshall, 659 F. Supp. 2d 231, 242 (D. Mass. 2009).  Count IV is thus dismissed as to Baker and Higgins O'Brien.

Defendants further contend that dismissal against Medeiros is also appropriate.  D. 42 at 23-24.  First, Defendants maintain that Section 32 does not create a private right of action.  The Court will not grant dismissal based on this argument because, although they do not explicitly address whether a private right of action exists, at least two Massachusetts courts have previously reached the merits of a Section 32 claim raised by inmate plaintiffs similar to Muldoon.  See Hastings, 424 Mass. at 52-53  (analyzing whether the defendant violated Section 32 and ultimately affirming summary judgment for the defendant because defendant's policy was entitled to deference and was not irrational as a matter of law); Rasheed v. Comm'r of Corr., No. 00-P-1798, 2002 WL 1825744, at  *3 (Mass. App. Ct. 2002) (affirming grant of summary judgment of Section 32 claim raised by inmates and explaining that the prison regulations implicated in the Section 32 claim were entitled deference).

Defendants next claim Muldoon has not alleged sufficient facts to show unequal treatment.  D. 42 at 24.  Defendants argue that any delays that occurred in mailing were a result of plaintiff failing to pay appropriate postage and Medeiros following prison regulations regarding indigency exceptions to postage under 103 C.M.R. § 481.  D. 42 at 24; see 103 C.M.R. § 481.06.  Similar to the discussion above, however, whether Defendants treated Muldoon in a particular manner because they were following certain prison regulations is a question of fact that is better suited for a later stage, not at the motion to dismiss phase.  That is, whether Medeiros provided equal treatment "as far as may reasonably be" provided because he enforced certain regulatory provisions is a factual inquiry, not a strict legal question properly before the Court at this early stage.  For purposes of the motion to dismiss, Muldoon has sufficiently alleged that he was not

provided equal treatment by Medeiros. In his complaint, Muldoon asserts that "all non-indigent inmate mail is delivered to the post office within the 24 hour period set forth" whereas "[s]olely based on his indigency . . . his legal and non-legal mail is intentionally impeded in its transmission . . . in excess of the 24 hour limitation." D. 26-1 ¶¶ 56-57. He further asserts that, on two occasions, he attempted to mail legal documents without postage because he did not have any stamps and had little to no funds in his inmate account on the dates of the attempted mailings; despite this, his mail was returned to him without being delivered on both occasions. See D. 26-1 ¶¶ 9-10. Muldoon asserts similar allegations as to his non-legal mail. For instance, Muldoon alleges that he attempted to mail a non-privileged letter without postage on December 24, 2014, but that Baker returned the documents to him without being mailed. Id. ¶ 16. For these reasons, the Court declines to dismiss Count IV against Medeiros at this stage.

**H. HIPAA Violation**

Although Muldoon does not list his alleged HIPAA violation as a separate count, Muldoon "asserts that the [D]efendants have violated his privacy rights under the [HIPAA], and its privacy regulations, 45 CFR 160 and 164." D. 26-1 at 2. It is well-established, however, that there is no private right of action for a HIPAA violation. Miller v. Nichols, 586 F.3d 53, 59–60 (1st Cir. 2009); Ray v. Wilbur, No. 13-cv-11712-RWZ, 2013 WL 4495134, at *1 n.1 (D. Mass. Aug. 16, 2013) (collecting cases). Further, Muldoon concedes he has no private cause of action under HIPAA. D. 55 at 16 n.2. Thus, to the extent there was a HIPAA claim, it is dismissed.

**I. Declaratory Judgment Under Mass. Gen. L. c. 231, §§ 1, 2 (Count V)**

Muldoon finally asserts claims under Mass. Gen. L. c. 231A, §§ 1, 2 in Count V. D. 26-1 ¶¶ 59-60. It is well-settled that "an actual controversy sufficient to withstand a motion to dismiss must appear on the pleadings" for a court to entertain such a petition for declaratory

relief.  Galipault v. Wash Rock Invs., LLC, 65 Mass. App. Ct. 73, 83-84 (2005); see Ly-Drouin v. Healthbridge Mgmt., LLC, No. 14-cv-13854-DJC, 2015 WL 3823615, at *5 (D. Mass. June 19, 2015).  Thus, Muldoon's claim for declaratory judgment survives only to the extent that his other claims have survived this motion to dismiss.[3]

## VI.  Conclusion

For the foregoing reasons, the Court **DENIES** Muldoon's request for oral argument related to a motion for sanctions on Defendants' attorney Jennifer Staples, D. 52, and **DENIES** Muldoon's motion for sanctions against Defendants' attorney Jennifer Staples, D. 54.  The Court **DENIES** as premature Muldoon's motion for extension of time to complete discovery, D. 56, **DENIES** without prejudice Muldoon's motion for an order to preserve evidence, D. 57, and **DENIES** as premature Muldoon's motion to compel Defendants to respond to his first request for production of documents, D. 71.  As to Defendants' motion to dismiss, the Court **ALLOWS in part and DENIES in part** Defendants' motion to dismiss, D. 40, in that:

- o   All claims raised against MDOC are DISMISSED.

- o   All § 1983 claims seeking damages against Higgins O'Brien, Baker and Medeiros in their official capacities are dismissed.

- o   All MCRA claims (Counts I and III) are dismissed.

- o   The right of access to courts claim (Count I) survives only as to Muldoon's June 17, 2014 allegations.

- o   Muldoon's supervisory liability claim against Higgins O'Brien is DISMISSED.

---

[3]  Muldoon has also filed a motion for extension of time to complete discovery and a motion to preserve evidence.  D. 56; D. 57.  D. 56 is denied as premature as no discovery schedule has been set yet.  Muldoon's motion to preserve evidence, D. 57, is denied without prejudice.  The issue of preservation should be taken up when the parties submit a joint statement regarding scheduling and discovery.  If the parties cannot reach agreement, then the Court will consider such motion. Muldoon also filed a motion to compel defendants to respond to his first request for production of documents.  D. 71.  The Court denies this motion as premature for the aforementioned reasons.

o Count II is DISMISSED as to damages liability for the opening of Muldoon's medical mail and as to Muldoon's photocopying claims against Higgins O'Brien, Medeiros and Baker in their personal capacities. All other Count II claims survive.

o Count III survives as to Muldoon's outgoing legal mail claim only.

o The § 32 claim (Count IV) survives only as to Medeiros.

o The HIPAA claim is DISMISSED.

o The claim for declaratory judgment survives only to the extent that the substantive counts (or portions of the substantive counts) survive.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge