UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EMMETT S. MULDOON, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF CORRECTION et al., <br><br> Defendants. | Civil Action No.: 15-cv-13892-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                 July 18, 2018

## I. Introduction

Plaintiff Emmett Muldoon ("Muldoon") filed this lawsuit against Defendants Department of Correction ("DOC"), Carol O'Brien ("O'Brien"), Sean Medeiros, Barbara Baker and William Mongelli (collectively, "Defendants"), bringing a series of claims relating to the delivery and handling of his mail and other documents. D. 26-1. Defendants moved for summary judgment. D. 159. For the reasons discussed below, the Court ALLOWS Defendants' motion for summary judgment, D. 159.

## II. Standard of Review

The Court grants summary judgment to a movant if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be

1

defeated by relying on improbable inferences, conclusory allegations, or rank speculation." Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 54–55 (1st Cir. 2006) (quoting Ingram v. Brink's, Inc., 414 F.3d 222, 228–29 (1st Cir. 2005)). On an issue as to which the movant lacks the burden of persuasion at trial, the movant can meet its initial burden on summary judgment either by "affirmatively produc[ing] evidence that negates an essential element of the non-moving party's claim" or by "point[ing] to evidentiary materials already on file—such as answers to interrogatories, affidavits, or portions of depositions—that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000).

While the pleadings of a *pro se* litigant should be construed broadly, "even a pro se litigant must meet the specificity requirement of Federal Rule 56, at least when the litigant becomes aware that specific facts must be provided to defeat a motion for summary judgment." Posadas de Puerto Rico, Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988).

### III. Factual Background

The following facts are undisputed.[1] Muldoon is an inmate who has been held, at all relevant times, at the Massachusetts Correctional Institution in Norfolk ("MCI-Norfolk"). D. 161 ¶ 1. O'Brien was, during all relevant times, the Commissioner of the Massachusetts Department of Correction ("DOC"). D. 161 ¶ 3. Medeiros is the Superintendent of MCI-Norfolk. D. 161 ¶ 4. Baker is an administrative officer at MCI-Norfolk and also serves as the treasurer there. D. 161 ¶ 5. Mongelli is a correctional librarian at MCI-Norfolk. D. 161 ¶ 6.

---

[1] Muldoon, a *pro se* litigant, filed an opposing statement of fact, D. 172, which contains a combination of legal arguments and factual allegations. None of the factual allegations in that filing refute the factual allegations summarized here.

2

On or about June 17, 2014, Muldoon attempted to mail legal documents without postage, including an affidavit in support of a motion for post-conviction relief under Mass. R. Crim. P. 30(b) in Norfolk Superior Court. D. 161 ¶ 7. On or about June 19, 2014, his legal documents were returned to him, unmailed, along with a copy of his inmate statement account from April 1, 2014 to June 17, 2014. D. 161 ¶ 8; D. 161-1 at 2. According to that inmate statement account, Muldoon's account began the period with a balance of $0.56 and there was a deposit of $50.00 on April 28, along with the following charges: $1.00 for monthly maintenance and administration of the account; $14.53 for postage; $20.00 for telephone charges; and a net charge of $15.01 for assorted canteen purchases. D. 161-1 at 2; D. 172-1 at 4. The net balance at the end of the period was $0.02. D. 161-1 at 2; D. 172-1 at 4.

The regulation controlling mail policy is set forth in 103 C.M.R. § 481. D. 161 ¶ 10. If an inmate is indigent, the inmate is permitted to mail three first class letters weighing one ounce or less each week at the institution's expense and an unlimited number of letters of any weight to any court official at the institution's expense. 103 C.M.R. § 481.09. The regulation defines an inmate as "indigent" if the inmate's account has, at the time at which the mail is to be sent and for the preceding sixty day period, $10 or less, plus the cost of the mail to be sent. 103 C.M.R. 481.05. Under MCI-Norfolk's operating procedures, if an inmate is not indigent, the inmate may use a yellow mailing charging slip to mail certain mail if the inmate does not have enough funds to pay for postage at the time of mailing and his account would be charged at a later time for the cost of postage. D. 161 ¶ 23.

On or about June 19, 2014, Muldoon filed a grievance regarding the return of his mail. D. 161 ¶ 24. The grievance coordinator, Danielle Laurenti, referred Muldoon to the policy for utilizing yellow mailing charging slips. D. 161 ¶ 25; D. 161-1 at 17. Between February 2014 and

3

June 2014, Muldoon mailed approximately ten motions to the Norfolk Superior Court regarding a Rule 30(b) motion. D. 161 ¶ 27. On October 20, 2014, the affidavit that Muldoon had attempted to file in the June 17, 2014 mailing was docketed by the Norfolk Superior Court. D. 161 ¶ 28. On March 16, 2015, the Norfolk Superior Court denied Muldoon's Rule 30(b) motion for a new trial. D. 161 ¶ 29.

On five occasions from November 2014 to July 2015, Muldoon received medical mail from the Lemuel Shattuck Hospital and Boston Medical Center which had been opened prior to its delivery to Muldoon. D. 161 ¶¶ 31-34. Under 103 C.M.R. § 481.10, mail from a medical provider is not privileged. D. 161 ¶ 38. Under 103 C.M.R. § 481.12(2), incoming non-privileged mail "shall be opened and inspected prior to delivery to the inmate." D. 161 ¶ 39. Under that regulation, "[t]he purpose of the inspection will be to receive and receipt any funds enclosed for the inmate, to verify and record the receipt of permitted personal property, and to prevent the transmission of contraband to the inmate." 103 C.M.R. § 481.12(2). Incoming privileged mail, that is, mail sent from a court, attorney or specified government official, 103 C.M.R. § 481.10(1), "may be required to successfully pass a fluoroscope examination for contraband material but shall not be opened by a DOC employee except in the presence of the addressee inmate and for the sole purpose of ascertaining that its contents are free of contraband." 103 C.M.R. § 481.11(3).

On or about April 13, 2013, Muldoon sought to have copies made of various documents he was filing in support of his Rule 30(b) motion in Norfolk Superior Court, including medical records. D. 161 ¶ 42. In the complaint, Muldoon alleged that he sought to have the copies of various documents, including medical records, made in his presence, but that Mongelli refused to give him permission to do so and that Muldoon then waited to copy the documents at a later date. D. 26-1 ¶¶ 38-40. The regulation controlling photocopying is set forth at 103 C.M.R. § 478.10.

Under that regulation, "[p]hotocopying services shall be for the purpose of duplicating original legal documents," 103 C.M.R. § 478.10(4), defined as "[o]riginal documents to be filed with the Courts in support of criminal litigation challenging the inmate's sentence, directly or collaterally, or in support of civil litigation challenging the conditions of his or her confinement." 103 C.M.R. § 478.05. At MCI-Norfolk, inmates who desire copies of their original legal documents place the originals, with a cover sheet, into a padlocked wooden box; the librarian reviews the request for compliance with the regulation; and, if the librarian approves the request, the copies are generally made by an inmate photocopy clerk under the supervision of either the librarian or another DOC staff member. D. 161 ¶¶ 47-49. In the first six months of 2016, the law library at MCI-Norfolk processed an average of 159 approved photocopying requests and copied 15,879 pages per month. D. 161 ¶ 56. Copies are usually made within one business day of submission. D. 161 ¶ 57. There is no evidence in the record of any occasion on which either an inmate photocopy clerk or the librarian read the documents that Muldoon submitted for photocopying at any point. D. 161 ¶¶ 58, 59.

On May 28, 2014, Muldoon attempted to mail legal documents. D. 161 ¶ 60. On May 31, 2014, Baker returned Muldoon's mail to him because it had no postage and Muldoon was not deemed indigent. D. 161 ¶ 61. On June 2, 2014, Muldoon mailed the same documents with sufficient postage. D. 161 ¶ 62. On January 15, 2015, Muldoon again attempted to mail legal documents, and, on January 17, 2015, Baker returned the document to him because it had no postage and Muldoon was not deemed indigent. D. 161 ¶¶ 63, 64. On January 20, 2015, Medeiros directed Baker to mail Muldoon's legal documents, notwithstanding the lack of postage. D. 161 ¶ 66. Under 103 C.M.R. § 481.07(3), "[o]utgoing mail shall be collected from the inmates and delivered to the post office . . . within 24 hours of collection, except when an article of mail is held

5

pursuant to [the provision regarding censorship of outgoing mail]." Under the standard operating procedure of MCI-Norfolk, prior to the delivery of outgoing mail to the post office, mail is inspected for processing and will only be approved if it does not contain contraband and has sufficient postage, provided either by the inmate or by the institution if the inmate has been deemed indigent. D. 161 ¶¶ 72-73. According to DOC, "outgoing mail" refers to mail that has already been inspected for contraband, has sufficient postage, and is ready to be brought to the post office. D. 161 ¶ 21.

## IV. Procedural History

Muldoon filed his complaint on November 12, 2015. D. 1. He subsequently amended the March 31, 2016, D. 21, and then again on May 6, 2016. D. 26-1. In the second amended complaint, he brought a claim for denial of access to the courts, under 42 U.S.C. § 1983 for violation of the First Amendment, the Massachusetts Civil Rights Act, and Article XI of the Massachusetts Constitution (Count I); a claim for violation of privacy, under the First Amendment, Section 1983 for violation of the First Amendment and Mass. Gen. L. c. 214 (Count II); a claim for illegal seizure of both medical mail and legal mail, under Section 1983 for violation of the Fourth Amendment, the Massachusetts Civil Rights Act ("MCRA"), and Article XIV of the Massachusetts Declaration of Rights (Count III); a claim for denial of equal treatment, under Mass. Gen. L. c. 127 (Count IV); and a claim for declaratory judgment (Count V). D. 26-1 at 12-14.

The Court granted the Defendants' motion to dismiss the second amended complaint in part, dismissing all claims under Section 1983 for damages against the Defendants in their official capacities; all claims under the MCRA; allegations under Count I related to the delays in mailing on May 28, 2014, July 21, 2014, and January 15, 2015; all supervisory liability claims against O'Brien; Count II with respect to the Section 1983 claim against Defendants O'Brien, Medeiros,

6

and Baker; Count III with respect to medical mail; and Count IV with respect to O'Brien and Baker. D. 72 at 25-26.

The Defendants have moved for summary judgment with respect to all of the remaining claims. D. 159. The Court heard argument on the motion and took the matter under advisement, D. 177, and now turns to addressing each of the remaining claims.

V.      Discussion

   A.      **Count I: Section 1983 Claim Based on the First Amendment Related to Outgoing Mail on June 17, 2014**

Muldoon contends that the Defendants infringed his right of access to the courts, under the First Amendment and Article XI of the Massachusetts Declaration of Rights. D. 174 at 2. The Defendants contend that there is no genuine dispute of fact regarding whether the delay in filing the affidavit that Muldoon had attempted to file actually hindered his efforts to pursue his legal claim because the affidavit was filed before the Norfolk Superior Court rendered its decision. See Evicci v. Baker, 190 F. Supp. 2d 233, 241 (D. Mass. 2002) (holding that showing actual injury in claim of restricted access to the courts requires showing "actual prejudice" in the subject suit); Cancel v. Goord, No. 00-cv-2042-LMM, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (holding that "to survive a motion to dismiss a plaintiff must allege . . . that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim"). It is undisputed that the affidavit was filed before the Norfolk Superior Court rendered its decision on Muldoon's Rule 30(b) motion. D. 161 ¶¶ 28-29. The Court takes judicial notice of the Norfolk Superior Court's Memorandum and Order denying Muldoon's Rule 30(b) motion. Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (explaining that a court may take judicial notice of "matters of public record" such as "documents from prior state court adjudications" when ruling on a motion to dismiss). That Memorandum and Order shows that the Norfolk Superior

7

Court did not deny Muldoon's Rule 30(b) motion because his affidavit was untimely, but rather addressed the merits of Muldoon's various claims and rejected them. D. 161-1 at 33 (attaching docket); Commonwealth v. Muldoon, Cr. No. 95-89, D. 46 (Norfolk Superior Court, March 16, 2015). Muldoon, therefore, cannot show the requisite prejudice. Thus, the Defendants' motion for summary judgment with respect to Count I is ALLOWED.

### B. Count II: Claims Related to Opening of Medical Mail Under the First Amendment, Section 1983, and Mass. Gen. Laws c. 214 §1B

Muldoon brings a claim for injunctive relief under the First Amendment against Defendants related to the opening of medical mail, a claim under Section 1983 for money damages against Mongelli and a claim under state law for invasion of privacy.

*1. Claim for Injunctive Relief regarding First Amendment Claim*

Muldoon contends that the DOC policy under which his medical mail was opened outside of his presence violates his constitutional right to privacy. D. 171 at 13-14. The Defendants contend that the record does not show that the medical information seen by DOC officials implicates First Amendment rights or that the information was disclosed to non-DOC officials. D. 160 at 6, 11. As this Court noted in its earlier ruling on the Defendants' motion to dismiss, D. 72, the First Circuit has not determined whether prisoners have a constitutional right to keep medical information private, Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 143 & n.5 (1st Cir. 2014), but other Circuits have done so, within certain bounds. In Doe v. Delie, 257 F.3d 309, 317 (3rd Cir. 2001), the court held that prisoners have a constitutional right to privacy in their medical information, but that prisoners do not have "a right to conceal [medical information] from everyone in the corrections system" as that right is subject to "substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." The court explained that "an [inmate's] constitutional right may be curtailed by a policy

8

or regulation that is shown to be 'reasonably related to legitimate penological interests,'" and that courts "must respect the administrative concerns underlying a prison regulation, without requiring proof that the regulation is the least restrictive means of addressing those concerns." Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The Sixth Circuit, in Moore v. Prevo, 379 F. App'x 425, 427 (6th Cir. 2010), adopted the reasoning in Doe, holding that "an inmate has a constitutional privacy right guarding against disclosure of his sensitive medical information, especially to other inmates" but not against disclosure to corrections officials.

Muldoon does not point to any case which has found a constitutional right to privacy that protected against the disclosure of any medical information to DOC personnel. Even assuming that a constitutional right to privacy would exist in such circumstances, however, Muldoon's claim still does not survive summary judgment. The record does not show any violation of the DOC policy at issue, D. 161 ¶ 41, and there is a stated legitimate penological purpose for that policy of opening medical mail: preventing the entry of contraband into the prison, and nothing in the record casts doubt on the relationship between the stated purpose and the policy. 103 C.M.R. § 481.12. Although Muldoon identifies a less restrictive means by which the DOC could achieve that objective – that is, treating medical mail like privileged mail and opening it only in the presence of the inmate, D. 171 at 13 – this Court adopts the reasoning of Doe that the DOC need not adopt the least restrictive policy, Doe, 257 F.3d at 317, at least with respect to situation presented here and the disclosure is, at best, only to DOC personnel. Thus, the Court ALLOWS the Defendants' motion for summary judgment with respect to this claim.

## 2. Section 1983 Claims

Just as there is no genuine issue of material fact with respect to the First Amendment claim, there is similarly no genuine issue of material fact with respect to Muldoon's Section 1983 claim for money damages against Mongelli.

## 3. Mass. Gen. Laws c. 214 §1B

Under Mass. Gen. Laws c. 214 §1B, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." "[F]or a plaintiff to succeed on an invasion of privacy claim, he must prove not only that the defendant unreasonably, substantially and seriously interfered with his privacy by disclosing facts of highly personal or intimate nature, but also that it had no legitimate reason for doing so." Spencer v. Roche, 755 F. Supp. 2d 250, 271–72 (D. Mass. 2010) (quoting Martinez v. New England Med. Ctr. Hosps., Inc., 307 F. Supp. 2d 257, 267 (D. Mass. 2004)), aff'd, 659 F.3d 142 (1st Cir. 2011). While most claims under this statute involve public disclosure of private facts, the statute also protects against "unreasonable intrusion upon the plaintiff's seclusion." Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 382 n. 16 (2005). The Defendants contend that, because the mail was opened pursuant to a policy in furtherance of a legitimate objective, Muldoon's claim under state law fails. D. 160 at 9. There is nothing in the record that indicates that the policy was not in furtherance of a legitimate objective, as explained above. Thus, the Defendants' motion for summary judgment with respect to Count II is ALLOWED.

### C. Count II: First Amendment, Section 1983 and Chapter 214 Claims Related to Copying of Medical Records

Muldoon contends that the copying policy violated his rights under the First Amendment and Mass. Gen. Laws c. 214 §1B because it requires that an inmate expose medical records to the Librarian and inmate photocopy clerks. D. 174 at 12. With respect to the portion of the claim that

10

concerns the disclosure of medical records to Mongelli, the librarian, the record does not show that Mongelli disclosed the information to anyone else or that the information revealed to Mongelli was particularly personal. Furthermore, the policy by which Mongelli obtained access to the medical records serve a legitimate objective – ensuring that the items provided, which may only be "for the purposes of duplicating original legal documents," meet the standards for photocopying laid out in 103 C.M.R. § 478.10. Thus, as with the claims related to the opening of medical mail, any alleged disclosure of medical records here, for the minimal purpose of photocopying, and are disclosed only to DOC personnel pursuant to a policy with a legitimate objective on the record here does not survive the Defendants' motion for summary judgment as to this claim under the First Amendment, Section 1983, or Mass. Gen. Laws c. 214 §1B.

With respect to the portion of the claim that concerns the disclosure of medical records to the inmate photocopy clerk, the record does not indicate that an inmate photocopy clerk at any point had access to or read any such records belonging to Muldoon. D. 161 ¶¶ 58, 59. Rather, based on the allegations in the complaint, it appears that Muldoon chose to avoid surrendering his documents to Mongelli and the inmate photocopy clerk and instead to wait to photocopy his documents at a later date (presumably, when he did not have to surrender his documents to the inmate photocopy clerk). D. 26-1 ¶¶ 38-40; D. 174 at 15. Thus, there is no violation of a privacy right that can ground Muldoon's claim under the First Amendment, Section 1983, or Mass. Gen. Laws c. 214 §1B. Moreover, Muldoon does not allege that the delay in making the photocopies in question resulted in any adverse impact to his ability to prosecute his Rule 30(b) motion. The Defendants' motion for summary judgment as to the copying of medical records portion of Count II is ALLOWED.

### D. Count III: Fourth Amendment, Section 1983 and Article XIV Claims Related to Outgoing Mail

Muldoon contends that the DOC's retention of his outgoing mail for more than twenty-four hours on May 28, 2014, July 21, 2014, and January 15, 2015, violated his rights under the Fourth Amendment and Article XIV of the Massachusetts Declaration of Rights. D. 174 at 17. Muldoon argues that the DOC should have delivered his outgoing mail to the post office within twenty-four hours of receiving it. D. 174 at 17. It is unclear whether Muldoon contends that the DOC did not follow its applicable policy or whether Muldoon challenges the legality of the applicable policy.

To the extent that Muldoon contends that DOC did not follow its applicable policy because his outgoing mail should be been subject to the twenty-four rule set forth in 103 C.M.R. § 481.07(3), this argument fails. According to the uncontroverted affidavit of Suzanne Thibault, the Deputy Superintendent of Operations and Security at MCI-Norfolk, MCI-Norfolk's "Procedural Statement" states that "[a]ll Indigent Mail shall be brought to the Treasurer's Office by the Mail Officer to verify if the inmate is indigent. If the inmate is indigent, the Mail Officer will apply postage and forward to Post Office." D. 161-1 at 6. "If the inmate is not indigent, the letters will be returned to the inmate and mailed at the inmate's expense." D. 161-1 at 6. Mail is only deemed "outgoing mail," within the ambit of 103 C.M.R. § 481.07(3), if it has sufficient postage, has been inspected for contraband, and has been approved for mailing. D. 161-1 at 7. Under Massachusetts law, courts accord "considerable deference" to an agency's interpretation of its own regulations, and a party challenging that interpretation faces a "formidable burden" to show that the agency's interpretation is not rational. Ten Local Citizen Grp. v. New England Wind, LLC, 457 Mass. 222, 228 (2010) (citations omitted). There is no reason here to conclude that the DOC's interpretation of the phrase "outgoing mail" to exclude mail that does not have the proper

postage (provided either by the inmate or the institution) is not rational, as the DOC has an interest in ensuring that the DOC only pays for the postage of inmates who are deemed indigent. Thus, there is no genuine dispute of material fact regarding whether the DOC followed the applicable policy with respect to the mail at issue.

To the extent that Muldoon contends that the seizure of his mail for a matter of days before the mail was returned to him was unreasonable because he has a constitutional right to the return of mail without sufficient postage within twenty-four hours, that contention appears to have no support in case law. Muldoon's mail was returned to him within two or three days of his delivery of the mail to the DOC. D. 161 ¶¶ 60, 61. There is nothing in the record that would support a finding that a delay of this duration was unreasonable, either within the meaning of the Fourth Amendment or Article XIV of the Massachusetts Declaration of Rights.

Finally, to the extent that Muldoon contends that the policy implemented by the DOC is unconstitutional because he should have been deemed indigent, that claim fails. Nothing in either the Fourth Amendment of the Constitution or Article XIV of the Massachusetts Declaration of Rights creates a right to indigent status that would entitle an inmate to send mail at the correctional facility's expense. The source of that right is the First Amendment's right of access to the courts, and the Court has addressed why Defendants are entitled to summary judgment as to that claim above. Thus, the Defendants' motion for summary judgment with respect to Count III is ALLOWED.

### E. Count IV: Section 32 Claim

In his complaint, Muldoon asserts a claim for denial of equal treatment under Mass. Gen. Laws c. 127 § 32. D. 26-1 at 14. Under that statute, "[t]he superintendents of the institutions under the supervision of the department of correction shall treat the prisoners with the kindness

13

which their obedience, industry and good conduct merit." Mass. Gen. Laws c. 127 § 32. Muldoon contends that the seizure of his outgoing mail for more than twenty-four hours constituted a violation of his rights under Section 32. D. 26-1 at 15. Massachusetts courts have construed Section 32 to "assure 'equal treatment, *as far as may reasonably be*, for prisoners who are not being disciplined.'" Hastings v. Comm'r of Corr., 424 Mass. 46, 53 (1997) (quoting Blaney v. Comm'r of Corr., 374 Mass. 337, 341 (1978)) (emphasis in original). Under the statute, courts apply "rational basis analysis of the type applied to equal protections claims where there is no 'fundamental interest' or inherently 'suspect classification.'" Id. Muldoon, in his complaint, argued that his rights under Section 32 were violated because he was not treated equally to inmates who had placed the appropriate postage on their mail and thus had their mail delivered to the post office within twenty-four hours. D. 26-1 at 15. The Defendants argue that there is no genuine dispute of material fact regarding this claim because it is undisputed that the DOC applied the policy, which is reasonably related to the legitimate penological interest of providing postage only to those inmates deemed indigent under the regulations, correctly to Muldoon. D. 160 at 17. As described above, nothing in the record suggests either that the DOC did not comply with its policy or that its policy is not rationally related to a legitimate penological interest. Thus, the Defendants' motion for summary judgment as to Count IV is ALLOWED.

      **F.**     <u>**Declaratory Judgment under Mass. Gen. L. c. 231, §§ 1, 2 (Count V)**</u>

Muldoon finally asserts claims for declaratory judgment under Mass. Gen. Laws c. 231, §§ 1, 2, related to the prior claims. D. 26-1 at 15. For the same reasons that the Court granted summary judgment as to the above claims, the Court ALLOWS the Defendants' motion for summary judgment with respect to Muldoon's claim for declaratory judgment.

## VI.  Conclusion

For the foregoing reasons, the Court ALLOWS the Defendants' motion for summary judgment, D. 159.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge